1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JUDITH HARRILL,

    Plaintiff,

    v.

EMANUEL MEDICAL CENTER, et al.,

    Defendants.

No.  2:23-cv-01672-DC-CKD

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

(Doc. No. 27)

This matter is before the court on Defendants' motion to dismiss Plaintiff's class action complaint. (Doc. No. 27.) Pursuant to Local Rule 230(g), the pending motion was taken under submission to be decided on the papers. (Doc. No. 31.) For the reasons explained below, the court will grant Defendants' motion to dismiss.

**BACKGROUND**

On August 10, 2023, Plaintiff Judith Harrill filed a class action complaint against Defendants Emanuel Medical Center ("EMC") and Tenet Health ("Tenet") (collectively, "Defendants") for allegedly intercepting and transmitting her protected health information ("PHI") and personally identifiable information ("PII") to Meta Platforms, Inc. ("Meta"),

/////

/////

/////

1

1    formerly known as Facebook,[1] without her knowledge or consent.[2] (Doc. No. 1 at 1–5.) Plaintiff

2    alleges Defendants transmitted her PHI and PII to Meta via a hidden tracking tool known as Meta

3    Pixel ("Pixel"), that was installed on Defendant EMC's website at

4    https://www.emanuelmedicalcenter.org/ ("Website"). (*Id.* at ¶¶ 1, 6, 15.)

5           Plaintiff brings five causes of action against Defendants: (1) invasion of privacy –

6    intrusion upon seclusion under California common law; (2) invasion of privacy under the

7    California Constitution, Art. I § 1; (3) violation of the California Confidentiality of Medical

8    Information Act ("CMIA"), California Civil Code §§ 56.06 *et seq.*; (4) violation of the California

9    Invasion of Privacy Act ("CIPA"), California Penal Code §§ 630 *et seq.*; and (5) breach of

10   implied contract. (*Id.* at 38–56.)

11          Plaintiff brings this data privacy action against Defendants on behalf of herself, a

12   "nationwide class," and a "California subclass." (*Id.* at ¶ 158.) The "nationwide class" is defined

13   as "[a]ll natural persons in the United States whose PHI was collected through [Meta's] Pixel

14   through the Website." (*Id.*) The "California subclass" is defined as "[a]ll natural persons residing

15   in California whose PHI was collected through [Meta] Pixel through the Website." (*Id.*)

16   Plaintiff's common law claims for invasion of privacy and breach of implied contract are brought

17   on behalf of Plaintiff and the nationwide class. (*Id.* at 40, 55.) Plaintiff's remaining claims, which

18   arise under the California Constitution and California statutes, are brought on behalf of Plaintiff

19   and the California subclass. (*Id.* at 44, 47, 53.)

20   **A.    Factual Background**

21          Plaintiff alleges the following in her complaint. Defendant Tenet is a health system and

22   services platform comprised of three different business units—surgical centers, hospital

---

[1] Plaintiff refers to Meta as both "Meta" and "Facebook" throughout her complaint. For clarity in this order, the court uses "Meta" to refer to the corporation and "Facebook" to refer only to Meta's social media platform.

[2] Plaintiff also named Meta as a defendant in this action, but on October 12, 2023, the court severed and transferred all claims against Defendant Meta to the Northern District of California so those claims could be related to the pending litigation *In re Meta Pixel Healthcare Litig.*, No. 3:22-cv-3580-WHO (N.D. Cal. 2022). (Doc. No. 23.) Defendant Meta was therefore terminated from this action on October 12, 2023.

1    operations, and healthcare-focused customer service and revenue management. (Doc. No. 1 at

2    ¶ 27.) Defendant EMC provides hospital services in Turlock, California. (*Id*. at ¶ 26.) Defendant

3    EMC provides the only heart attack receiving center between the California cities of Modesto and

4    Fresno. (*Id.*)

5        Defendant EMC maintains a public-facing Website where prospective and current patients

6    can "search for information related to their health conditions, hospital locations and doctors." (*Id.*

7    at ¶¶ 1, 26.) Specifically, the Website includes a "search bar" that allows users to search for

8    information about medical conditions, such as "cancer," "diabetes," or "pregnancy care." (*Id*. at

9    ¶¶ 6–7, 13, 100–01.) The Website also includes a "Find a Doctor" webpage that allows users to

10   search for doctors by specialty and location. (*Id*. at ¶¶ 6–7, 93–96.)

11       1.    Defendants' Use of Meta Pixel

12       Defendants embedded Pixel, a "snippet of computer code," on the Website. (*Id.* at ¶¶ 6–

13   7.) When a user accesses a webpage containing Pixel on the Website, Pixel tracks the actions

14   taken by the user (i.e., clicking a button or searching a term) and transmits that data to Meta. (*Id.*

15   at ¶¶ 13, 71, 87-106.) Pixel was developed by Meta "as an innovative solution for reporting and

16   optimizing conversions (clicks to purchases), audience building, and gaining valuable insights

17   into website usage." (*Id.* at ¶ 63.) Pixel enables "Defendants to analyze user experiences and

18   behavior on the Website to assess the Website's traffic and functionality," and aids Defendants in

19   targeting Website users with advertisements and "measuring how well those advertisements are

20   working." (*Id.* at ¶ 10.)

21       Pixel functions by monitoring for "events" and transmitting data directly to Meta in real-

22   time when an "event" occurs. (*Id.* at ¶¶ 7, 64, 71, 87.) On the Website, a Pixel "event" is triggered

23   when a user searches for information related to health conditions using the "search bar," or

24   searches for doctors by specialty and location on the "Find a Doctor" webpage. (*Id.* at ¶¶ 6–7, 87–

25   106.) The data transmitted to Meta when a Pixel "event" is triggered consists of a "full-string

26   detailed URL, which includes the name of the website, the web pages the [user] viewed, the name

27   of the doctor a [user] is considering, and search terms entered by the [user]." (*Id.* at ¶ 105.) Meta

28   also receives the Website user's PII, including their internet protocol (IP) address, name, email,

and phone number. (*Id.* at ¶ 70.) If a Website user is signed into Facebook or has previously signed into Facebook within the past year using the same browser that was used to access the Website, Meta also receives the Website user's Facebook ID ("FID"). (*Id.* at ¶¶ 6–8, 83.) Data on the Website user's activity and FID is sent to Meta as "one data point," allowing Meta to "link" the user's interactions with the Website to their Facebook profile. (*Id.* at ¶¶ 8, 97, 100.)

2.   Allegations Specific to Plaintiff

Plaintiff is a resident of Turlock, California. (*Id.* at ¶ 25.) Plaintiff began using the Website in or around March 2021 to "search for information related to health conditions or suspected health conditions, and to schedule treatment for actual or potential medical conditions." (*Id.*) Specifically, Plaintiff used the "Website's search function . . . to search for information related to symptoms or conditions she was experiencing, as recently as April 2023." (*Id.*)

Plaintiff has been a Facebook user since approximately 2006. (*Id.*) Plaintiff's Facebook profile contains personal information such as her name, occupation, and place of residence. (*Id.*) While utilizing the Website, Plaintiff was signed into her Facebook profile or had signed into her Facebook profile in the same browser within the past year of using the Website. (*Id.*)

Plaintiff alleges that when she used the Website, information regarding her interaction with the Website was intercepted and transmitted to Meta via Pixel without her consent, alongside her FID. (*Id.* at ¶¶ 25, 122–24.) According to Plaintiff, the information transmitted to Meta regarding her interaction with the Website included her PHI and PII. (*Id.* at ¶¶ 6, 108, 115.)

**B.   Procedural Background**

On October 3, 2023, the court issued an order relating this action to two other actions pending in this district: (1) *Beltran v. Doctors Medical Center of Modesto, et al.*, No. 2:23-cv-01670-DC-CKD, and (2) *Doe v. Tenet Healthcare Corp., et al.*, No. 1:23-cv-01106-DC-CKD.

On October 18, 2023, Defendants filed the pending motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. No. 27.) On June 28, 2024, Defendants filed a notice of supplemental authority in support of their motion to dismiss. (Doc. No. 39.) On July 5, 2024, Plaintiff filed an opposition to the pending motion. (Doc. No. 40.) On July 19, 2024, Defendants filed their reply

1    thereto. (Doc. No. 44.)

2                                    **LEGAL STANDARD**

3            A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to

4    the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732

5    (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a

6    cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."

7    *Somers v. Apple, Inc*., 729 F.3d 953, 959 (9th Cir. 2013). In determining whether a complaint

8    states a claim upon which relief can be granted, the court accepts as true the allegations in the

9    complaint and construes the allegations in the light most favorable to the plaintiff. *Manzarek v. St.*

10   *Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court is not

11   required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact,

12   or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

13   (citation omitted).

14           Under Federal Rule of Civil Procedure Rule 8(a), a complaint must include "a short and

15   plain statement of the claim showing that the pleader is entitled to relief," in order to "give the

16   defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.*

17   *v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must allege enough facts to state a claim to

18   relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff

19   pleads factual content that allows the court to draw the reasonable inference that the defendant is

20   liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility

21   standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

22   that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). If a claim is

23   dismissed for failure to comply with these requirements, "[l]eave to amend should be granted

24   unless the district court 'determines that the pleading could not possibly be cured by the

25   allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009)

26   (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

27                                       **ANALYSIS**

28           Defendants move to dismiss all of Plaintiff's claims brought against them. (Doc. No. 27.)

                                              5

1   Defendants contend that Plaintiff's complaint should be dismissed because it (1) fails to allege

2   facts sufficient to support a cognizable legal theory, (2) is deficient with respect to each claim,

3   and (3) is wholly or partly time-barred by the applicable statute of limitations. (*Id.*) The court

4   addresses each argument in turn.

5   **A.    Allegations Regarding the Disclosure of Plaintiff's Protected Health Information**

6           As an initial matter, Defendants move to dismiss Plaintiff's complaint in its entirety based

7   on Plaintiff's failure to allege facts sufficient to support a cognizable legal theory. (Doc. No. 27 at

8   12–13.) The overarching theory underlying all of Plaintiff's claims is that Defendants violated her

9   privacy rights by collecting and transmitting her PHI and PII from the Website to Meta via Pixel,

10  without her knowledge or consent. (Doc. No. 1 at 1–5.) Defendants argue Plaintiff's theory is

11  conclusory because Plaintiff's complaint does not indicate "what information [Plaintiff] entered

12  [on the Website] and what information was shared with [Meta]." (Doc. No. 27 at 13.)

13  Specifically, Defendants argue Plaintiff fails to allege "what information regarding her 'health

14  conditions or suspected health conditions' she supposedly searched for on the Website, or what

15  symptoms or conditions they were allegedly experiencing." (*Id.* at 10.) In Defendants' view,

16  Plaintiff merely "concludes that [the information she entered] was health information." (Doc. No.

17  44 at 3.)

18          In her opposition to the pending motion, Plaintiff argues she has alleged facts allowing the

19  court to draw a reasonable inference that Defendants are liable for the alleged misconduct. (Doc.

20  No. 40 at 10.) Namely, "that [Plaintiff used] Defendants' Website to search for information

21  related to symptoms or conditions she was experiencing and to schedule treatment for those

22  actual or potential medical conditions." (*Id.*) (citing Doc. No. 1 at ¶ 25).

23          The court finds the allegations in Plaintiff's complaint deficient. Plaintiff does not identify

24  with specificity what information she provided to Defendants via her browsing activity on the

25  Website and thus what information was subsequently transmitted to Meta. Although Plaintiff's

26  complaint spans over fifty pages, only one paragraph is dedicated to detailing Plaintiff's

27  interactions with Defendants' Website. (Doc. No. 1 at ¶ 25.) Plaintiff vaguely alleges that she

28  used the Website to search for information related to "actual or potential" health conditions. (*Id.*)

1    In her allegations, Plaintiff does not describe the types of searches she conducted or the webpages

2    she viewed, even though her browsing activity forms the basis for her assertion that her

3    information was purportedly shared with Meta. (*See id.* at ¶¶ 6-7, 100.)

4         For instance, Plaintiff's complaint provides examples of health conditions Website users

5    may search for, such as "diabetes," and searches for doctors based on specialty, such as

6    "psychiatry," but Plaintiff does not specify the types of health conditions and doctors Plaintiff

7    actually searched for on the Website. (*Id.* at ¶¶ 94, 100–01.) Similarly, Plaintiff's complaint

8    describes how Pixel transmits information to Meta when Website users visit the "Find a Doctor"

9    webpage, but Plaintiff does not allege that she visited the "Find a Doctor" webpage. (*Id.* at ¶¶ 93–

10   96.) Thus, Plaintiff's allegations of examples are insufficient to support her theory that

11   Defendants violated her privacy rights by collecting and transmitting her PHI to Meta. *See Cousin*

12   *v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) ("*Cousin I*") (finding the

13   plaintiffs' complaint lacked sufficient factual support because it only provided hypothetical

14   examples and failed to specify what information plaintiffs provided defendants through their

15   browsing history).

16        Further, Plaintiff has not alleged that her browsing history on the Website related to the

17   provision of healthcare or patient status, such that the disclosure of her browsing history to Meta

18   constituted the disclosure of her PHI. The "disclosure of browsing activity on a publicly available

19   website that does not relate to 'the past, present, or future physical or mental health or condition

20   of an individual is not actionable.'" *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072,

21   1084 (W.D. Wash. 2024). Indeed, "[a]n internet user might research medical information for

22   reasons unrelated to the user's own health conditions." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d

23   876, 893 (C.D. Cal. 2024) (noting courts have precluded "claims for public browsing activities

24   that do not reveal personal medical information"); *see also Smith v. Facebook, Inc.*, 262 F. Supp.

25   3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ("search results related to

26   the phrase 'intestine transplant'" constituted "general health information . . . accessible to the

27   public at large," not "protected health information"). Thus, the collection and transmission of

28   information from "unauthenticated webpages (*i.e.*, pages that do not require a user to log in to

7

access the website)" is "only actionable where the information disclosed either (1) 'demonstrates that the plaintiff's interactions plausibly relate to the provision of healthcare,' or (2) 'connects a particular user to a particular healthcare provider' or otherwise identifies patient status, which is protected health information." *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025) (citing *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967 (S.D. Cal. 2023) ("*Cousin II*")).

*Cousin I* is instructive on this point. In *Cousin I*, plaintiffs alleged that they used defendant's public website to "research . . . doctors," "look for providers," and "search for medical specialists." *Cousin I*, 681 F. Supp. 3d at 1123. Plaintiffs claimed that by sharing this data with Meta through Pixel, defendant allowed Meta to collect their sensitive medical information in violation of their privacy rights. *Id.* The district court determined that the collection of data regarding the plaintiffs' browsing activity was "not considered '[p]rotected [h]ealth [i]nformation' because 'nothing about [the] information relate[d] specifically to [p]laintiffs' health.'" *Id.* (citing *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)). The court in *Cousin I* therefore found the plaintiffs could not maintain their privacy claims "based upon the theory that [d]efendant's sharing of their browsing activity, collected on its publicly facing website, [was] a disclosure of their sensitive medical information." *Id.* at 1124. As in *Cousin I*, here Plaintiff has not alleged sufficient facts to demonstrate that her browsing activity on the Website was related to the provision of healthcare, as opposed to "general health information [regarding conditions, symptoms, and doctors] accessible to the public at large." *Smith*, 262 F. Supp. 3d at 954–55.[3]

---

[3] In her opposition to the pending motion, Plaintiff argues her allegations are more analogous to the facts alleged in *Cousin II*, rather than *Cousin I*. (Doc. No. 40 at 10–11.) The court disagrees. In *Cousin II*, the plaintiffs' claims survived dismissal because the plaintiffs alleged that they searched for a primary care physician by filtering physician search results based on specialty, identified their particular medical conditions, and booked an appointment to obtain treatment. *Cousin II*, 702 F. Supp. 3d at 973. The court in *Cousin II* therefore found that the plaintiffs' allegations "relat[ed] to the provision of health care," "convey[ed] information about a present medical condition," and involved "the provision of medical care covered by [the Health Insurance Portability and Accountability Act ('HIPAA')]." *Id.* Here, in contrast, Plaintiff fails to specify at a minimum, the types of doctors or medical conditions she searched for on the Website.

1    Finally, besides browsing for information on health conditions, symptoms, and doctors on

2  Defendants' Website, Plaintiff does not allege that she engaged in any other activity from which

3  an inference could be drawn that her PHI was disclosed. Indeed, Plaintiff does not allege using

4  Defendants' Website to access a patient portal, schedule an appointment, call a doctor's office,

5  refill a prescription, view test results, and review notes from an appointment—types of activity

6  that courts have found to be sufficient to demonstrate disclosure of PHI. *See e.g.*, *R.C. v.*

7  *Walgreen Co.*, 733 F. Supp. 3d 876, 893 (C.D. Cal. 2024) (noting that plaintiffs alleged "more

8  than merely viewing generic medical content on a publicly facing website" where they alleged

9  purchasing "specific products to treat specific health conditions"); *B.K. v. Desert Care Network*,

10  No. 2:23-cv-05021-SPG-PD, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) (finding the

11  plaintiffs' privacy claims based on the disclosure of personal medical information to be

12  sufficiently stated where plaintiffs alleged they used defendants' website and patient portal to

13  schedule appointments, refill prescriptions, and view test results and appointment notes).

14    For these reasons, and because all of Plaintiff's claims are predicated on her theory that

15  Defendants violated her privacy rights by collecting and transmitting her PHI to Meta via Pixel,

16  the court will grant Defendants' motion to dismiss Plaintiff's complaint in its entirety. However,

17  because allegations of additional facts could cure this pleading deficiency as to Plaintiff's legal

18  theory, the court will grant Plaintiff leave to amend.

19    Recognizing that providing guidance as to other pleading deficiencies will enable Plaintiff

20  to address those deficiencies in an amended complaint, the court proceeds to addresses the

21  sufficiency of Plaintiff's allegations as to each claim below, followed by a discussion of the

22  statutes of limitations applicable to Plaintiff's claims.

23  **B.    Invasion of Privacy Under Common Law and the California Constitution**

24    Plaintiff brings claims for invasion of privacy on behalf of herself, the nationwide class,

25  and the California subclass. (Doc. No. 1 at 40–42, 44–47.) To state a claim for invasion of

26  privacy under California common law, Plaintiff must show "(1) intrusion into a private place,

27  conversation or matter, (2) in a manner highly offensive to a reasonable person." *Shulman v. Grp.*

28  *W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998), *as modified on denial of reh'g* (July 29, 1998). A

1    claim for invasion of privacy under the California Constitution involves similar elements.

2    Plaintiff must plead that (1) they "possess a legally protected privacy interest," (2) they maintain

3    a reasonable expectation of privacy, and (3) "the intrusion is so serious in 'nature, scope, and

4    actual or potential impact as to constitute an egregious breach of the social norms.'" *Hernandez v.*

5    *Hillsides*, 47 Cal. 4th 272, 287 (2009). "Because of the similarity of [these] tests, courts consider

6    [these] claims together and ask whether: (1) there exists a reasonable expectation of privacy, and

7    (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d

8    589, 601 (9th Cir. 2020).

9        "The existence of a reasonable expectation of privacy, given the circumstances of each

10   case, is a mixed question of law and fact." *Id.* at 601. "[C]ourts consider a variety of factors" in

11   determining whether a reasonable expectation of privacy exists, "including the customs, practices,

12   and circumstances surrounding a defendant's particular activities." *Id.* (citation omitted).

13   "Determining whether a defendant's actions were 'highly offensive to a reasonable person'

14   requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the

15   degree and setting of the intrusion, the intruder's motives and objectives, and whether

16   countervailing interests or social norms render the intrusion inoffensive." *Id.* at 606. "While

17   analysis of a reasonable expectation of privacy primarily focuses on the nature of the intrusion,

18   the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a

19   matter of public policy." *Id.*

20       Defendants move to dismiss Plaintiff's invasion of privacy claims on the grounds that

21   Plaintiff fails to plead both a reasonable expectation of privacy and a highly offensive intrusion.

22   (Doc. No. 27 at 14–16.) In her complaint, Plaintiff alleges that she had a reasonable expectation

23   of privacy in her communications with Defendant on the Website because "medical data is

24   sensitive information that must be protected from unauthorized disclosure." (Doc. No. 1 at

25   ¶¶ 183–84, 208–11.) Plaintiff further alleges that Defendants' disclosure of her information "is

26   highly offensive to a reasonable person" because there was no legitimate objective for Defendants

27   to invade Plaintiff's privacy rights, Defendants did not allow Plaintiff the ability to control the

28   dissemination of her PHI, the context of the communication "between Plaintiff . . . and [her]

1  healthcare providers is highly sensitive," and public policy dictates that "Defendants' actions

2  undermine the relationship between Plaintiff . . . and her healthcare providers." (*Id.* at ¶¶ 187,

3  212.)

4      The court finds Defendants arguments to be persuasive. Notably, Plaintiff alleges in a

5  conclusory manner that she has a reasonable expectation of privacy in her communications with

6  Defendants on the Website because such communications contain "medical data." (Doc. No. 1 at

7  ¶¶ 183–84, 208–11.) However, Plaintiff's complaint does not allege facts describing any such

8  "medical data." As discussed above, Plaintiff's allegations regarding her browsing activity are

9  vague. Plaintiff does not specifically allege that her searches related to the provision of

10 healthcare, patient status, or otherwise included PHI. Thus, the court finds Plaintiff has not

11 sufficiently alleged a reasonable expectation of privacy in her browsing activity on the Website.

12 *See Desert Care Network*, 2024 WL 1343305, at *9 (noting that invasion of privacy claims

13 centered on "plaintiffs' browsing histories on defendants' public-facing websites" were

14 "dubious").

15     To be clear, Plaintiff has a reasonable expectation of privacy in her medical information.

16 *Id.* ("Patients' right to privacy in their medical records is 'well-settled.'") (citation omitted). But

17 given the limited factual allegations in Plaintiff's operative complaint, the court does not find

18 Plaintiff has sufficiently alleged that her browsing activity pertains to her own medical

19 information. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064, 1067 (C.D. Cal.

20 2024) (dismissing privacy claims where plaintiffs "fail[ed] to allege what, if any medical

21 information or medical records were transmitted or disclosed" when they used defendant's

22 website, such that the court could "only interpret that [p]laintiffs used [d]efendants' [w]ebsite for

23 routine medical searches and inquiries"). In order to sufficiently state her invasion of privacy

24 claims, Plaintiff must "describe the types or categories of sensitive health information that they

25 provided" to Defendants through the Website. *Doe v. Meta Platforms, Inc*., 690 F. Supp. 3d 1064,

26 1081 (N.D. Cal. 2023). As other courts have explained when dismissing invasion of privacy

27 claims brought against Meta with leave to amend, Plaintiff may amend to better describe the

28 health information provided to the defendants, and "[t]hat basic amendment (which can be

1   general enough to protect [Plaintiff's] specific privacy interests) will allow these privacy claims

2   to go forward."[4] *Id.*

3          Finally, Plaintiff does not allege facts sufficient to establish an "egregious breach of the

4   social norms" that is "highly offensive" because Plaintiff does not "plead that [her] medical

5   information was disclosed." *See Eisenhower*, 721 F. Supp. 3d at 1067. "Disclosing a user's

6   browsing history [unrelated to the provision of healthcare or patient status] does not plausibly

7   reach the level of 'highly offensive' conduct [required] under either common law or the

8   California Constitution." *Cousin I*, 681 F. Supp. 3d at 1126 (citing cases); *cf. Walgreen Co*., 733

9   F. Supp. 3d at 893–94 (finding the allegations that the defendants' disclosure of plaintiffs' private

10  health information included the purchasing of "sensitive health products" related to "specific

11  health conditions" were sufficient to survive a motion to dismiss based on the "highly offensive"

12  element).

13         For these reasons, the court finds Plaintiff fails to state a cognizable invasion of privacy

14  claim because Plaintiff has not pleaded a reasonable expectation of privacy or a highly offensive

15  intrusion.

16         Therefore, the court will grant Defendants' motion to dismiss Plaintiff's invasion of

17  privacy claims brought under common law and the California Constitution. Because Plaintiff may

18  be able to allege additional facts to support this claim, the court will grant Plaintiff leave to

19  amend.[5]

20  _____

21  [4] To the extent Plaintiff's disclosure of her activity on the Website could reveal sensitive or
    private information related to her health conditions, symptoms, and doctors, Plaintiff may file a
22  request to redact/seal such details, as appropriate. *See e.g.*, *In re Meta Pixel Healthcare Litig.*, No.
    3:22-cv-3580-WHO (N.D. Cal. 2022) (Doc. No. 185) (redacted consolidated class action
23  complaint alleging privacy claims based on defendants' use of Pixel); *Castillo v. Costco
    Wholesale Corp.*, No. 2:23-cv-01548-JHC (W.D. Wash. 2024) (Doc. No. 29) (redacted complaint
24  alleging the defendant installed Pixel to disclose personal health data collected from plaintiffs'
    interactions with the defendant's website).
25

26  [5] Defendants also move to dismiss Plaintiff's common law claims for invasion of privacy and
    breach of implied contract to the extent they are brought on behalf of the nationwide class
27  because Plaintiff's complaint does not specify which states' laws apply to the nationwide class.
    (Doc. Nos. 27 at 21–23; 44 at 9.) Plaintiff does not respond to this argument in her opposition to
28  the pending motion. Instead, Plaintiff argues that that to the extent her failure to identify which

                                                    12

1     **C.    California Confidentiality of Medical Information Act**

2          Plaintiff asserts a claim for violation of California's CMIA against Defendants on behalf

3     of herself and the California subclass. (Doc. No. 1 at 47–48.) Under California's CMIA, "[a]

4     provider of health care . . . shall not disclose medical information regarding a patient of the

5     provider of health care . . . without first obtaining an authorization." Cal. Civ. Code § 56.10(a)–

6     (c). If a health care provider "creates, maintains, preserves, stores, abandons, destroys, or disposes

7     of medical information," they "shall do so in a manner that preserves the confidentiality of the

8     information contained therein." Cal. Civ. Code § 56.101(a). A health care provider "who

9     negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical

10    information" is subject to liability under the CMIA. *Id.*

11         The CMIA defines medical information as "any individually identifiable information, in

12    electronic or physical form, in possession of or derived from a provider of health care, health care

13    service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental

14    health application information, reproductive or sexual health application information, mental or

15    physical condition, or treatment." Cal. Civ. Code § 56.05(i). "'Individually identifiable' means

16    that the medical information includes or contains any element of personal identifying information

17    sufficient to allow identification of the individual, such as the patient's name, address, electronic

18    mail address, telephone number, or social security number, or other information that, alone or in

19    combination with other publicly available information, reveals the identity of the individual." *Id.*

20    "This definition does not encompass demographic or numeric information that does not reveal

21    medical history, diagnosis, or care." *Eisenhower Med. Ctr. v. Superior Ct.*, 226 Cal. App. 4th 430,

22    _____

23    states' laws apply warrants dismissal of this class claim, any such dismissal should be without
      prejudice. (Doc. No. 40 at 25.) Due to variances among state laws, some courts within the Ninth
24    Circuit have required a plaintiff to plead which state's common law applies to their class claims,
      although other courts have noted that there does not appear to be a statutory basis for such a
25    pleading requirement. *Desert Care Network*, 2024 WL 1343305, at *3 n.2 (citing *Romero v.
      Flowers Bakeries, LLC,* No. 5:14-cv-05189-BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8,
26    2016); *Harris v. LSP Prod. Grp., Inc.*, No. 2:18-cv-02973-TLN-KJN, 2021 WL 2682045, at *14–
      15 (E.D. Cal. June 30, 2021)). However, the court notes that by default, a district court sitting in
27    diversity jurisdiction is "required to apply the substantive law of the state in which it sits,
      including choice-of-law rules." *Harmsen v. Smith*, 693 F.2d 932, 946–47 (9th Cir. 1982).
28

1    435 (2014).

2        Defendants argue Plaintiff's CMIA claim should be dismissed because Plaintiff does not

3    allege that Defendants were her "providers of healthcare." (Doc. No. 27 at 16.) Defendants

4    further argue that Plaintiff alleges in conclusory fashion that Defendants transmitted Plaintiff's

5    "medical information" to Meta using Pixel without any factual support. (*Id.*) In her opposition,

6    Plaintiff asserts she "was a patient of Defendants, as evidenced by her scheduling treatments for

7    actual or potential medical conditions." (Doc. No. 40 at 16 n. 5) (citing Doc. No. 1 at ¶ 25).

8    Plaintiff also argues her searches on the Website for information relating to health conditions,

9    suspected health conditions, and scheduled testing constitutes "medical information" under the

10   CMIA. (*Id.* at 17.)

11       Here too, the court finds Defendants' arguments to be persuasive. Plaintiff's complaint is

12   devoid of any allegation that Plaintiff was Defendants' patient when she used the Website, or at

13   any time. Moreover, Plaintiff's use of the Website alone does not support the inference that

14   Plaintiff was Defendants' patient because the Website is not exclusively available to Defendants'

15   patients. Indeed, Plaintiff alleges in her complaint that the Website is available to "all persons,

16   users, prospective patients and current patients." (Doc. No. 1 at ¶ 1.) Thus, the court finds that

17   Plaintiff fails to sufficiently allege that Defendants were her "providers of healthcare," as required

18   for a CMIA claim.

19       In addition, as previously discussed, Plaintiff's complaint fails to specify what "medical

20   information" Defendants' transmitted to Meta. Plaintiff alleges that she searched for information

21   concerning health conditions and symptoms on the Website (Doc. No. 1 at ¶ 25) but does not

22   plead facts sufficient to show that her searches revealed her personal "medical history, diagnosis,

23   or care." *See Eisenhower*, 226 Cal. App. 4th at 435. For this reason, the court finds that Plaintiff

24   has failed to sufficiently allege that Defendants transmitted her "medical information" to Meta.

25   *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) (dismissing a

26   CMIA claim where plaintiffs "fail[ed] to allege what, if any medical information or medical

27   records were transmitted or disclosed" to Meta when plaintiffs used a website embedded with

28   Pixel); *Cousin I*, 681 F. Supp. 3d at 1123, 1128 (dismissing a CMIA claim because plaintiffs'

1   research for doctors on a website embedded with Pixel was "general health information []

2   accessible to the public at large," unrelated to plaintiffs' health).

3          Accordingly, the court will grant Defendants' motion to dismiss Plaintiff's CMIA claim.

4   Because Plaintiff may be able to allege additional facts to state this claim, the court will grant

5   Plaintiff leave to amend.

6   **D.      California Invasion of Privacy Act**

7          Plaintiff brings a claim for a violation of the CIPA against Defendants on behalf of herself

8   and the California subclass. (Doc. No. 1 at 57–59.) The CIPA "broadly prohibits the interception

9   of wire communications and disclosure of the contents of such intercepted communications."

10   *Tavernetti v. Superior Ct. of San Diego Cnty.*, 22 Cal. 3d 187 (1978). Section 631(a) of CIPA

11   creates four avenues for relief:

12                  (1) where a person "by means of any machine, instrument, or
     contrivance, or in any other manner, intentionally taps, or makes any
13                  unauthorized connection . . . with any telegraph or telephone wire,
                    line, cable, or instrument";
14

15                  (2) where a person "willfully and without consent of all parties to the
                    communication, or in any unauthorized manner, reads, or attempts to
16                  read, or to learn the contents or meaning of any message, report, or
                    communication while the same is in transit";

17                  (3) where a person "uses, or attempts to use, in any manner, or for
                    any purpose, or to communicate in any way, any information so
18                  obtained"; and

19                  (4) where a person "aids, agrees with, employs, or conspires with any
                    person or persons to unlawfully do, or permit, or cause to be done
20                  any of the acts or things mentioned above."

21   *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023).

22          Plaintiff invokes the fourth avenue of relief, alleging Defendants violated Section 631(a)

23   of the CIPA because they "aided, agreed with, conspired with, and employed [Meta] to

24   implement the Pixel and to accomplish the wrongful conduct at issue." (Doc. No. 1 at ¶ 272.)

25          Defendants contend that Plaintiff's CIPA claim should be dismissed because Plaintiff (1)

26   fails to allege Defendants transmitted the "contents" of her communications; (2) fails to allege

27   Defendants "intercepted" her communications; and (3) fails to plead "aiding and abetting" with

28   specificity. (Doc. No. 27 at 19.) Because the court finds dismissal of Plaintiff's CIPA claim is

1  warranted due to her failure to allege Defendants transmitted the "contents" of her

2  communications, the court will not address Defendants' remaining arguments.

3       A violation of CIPA is analyzed under the same standards applied to a violation of the

4  federal wiretap act, Electronic Communications Privacy Act ("ECPA"), 18 U.S.C § 2510 *et seq*.

5  *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022). The ECPA defines

6  the term "contents" as "any information concerning the substance, purport, or meaning of that

7  communication." 18 U.S.C. § 2510. "Contents" means "the intended message conveyed by the

8  communication" as opposed to "record information regarding the characteristics of the message

9  that is generated in the course of the communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098,

10  1106 (9th Cir. 2014). While a URL that includes "basic identification and address information" is

11  not "content," a website "user's request to a search engine for specific information could

12  constitute a communication such that divulging a URL containing that search term to a third party

13  could amount to disclosure of the contents of a communication." *Id.* at 1108–09; *see also St.*

14  *Aubin v. Carbon Health Techs., Inc*., No. 4:24-cv-00667-JST, 2024 WL 4369675, at *4 (N.D.

15  Cal. Oct. 1, 2024) ("Descriptive URLs that reveal specific information about a user's queries

16  reflect the 'contents' of a communication.").

17       In her opposition to the pending motion, Plaintiff argues her queries on the Website

18  constitute "contents" of communications under CIPA. (Doc. No. 40 at 20–21.) Specifically,

19  Plaintiff alleges the "contents" of her communications to Defendants are the "search terms" she

20  typed in the "search bar" and "Find a Doctor" webpage monitored by Pixel. (*Id*.) However, as

21  previously discussed, Plaintiff's complaint does not specify or describe the searches Plaintiff

22  conducted on the Website. Nor does the complaint allege that Plaintiff visited the "Find a Doctor"

23  webpage. Thus, the court does not find Plaintiff's allegations sufficient to plead the "contents" of

24  her communications that were purportedly intercepted by Defendants within the meaning of

25  CIPA. *Cf. St. Aubin*, 2024 WL 4369675, at *4 n.4 (plaintiff's allegation that defendant

26  transmitted descriptive URLs was sufficient to allege a CIPA claim where plaintiff's "complaint

27  contain[ed] examples of actual searches, including screenshots"). Consequently, the court finds

28  that Plaintiff has not stated a cognizable CIPA claim.

Thus, the court will grant Defendants' motion to dismiss Plaintiff's CIPA claim, with leave to amend, because Plaintiff may be able to allege additional facts to support this claim.

**E.    Breach of Implied Contract**

Plaintiff brings a claim for breach of implied contract against Defendants on behalf of herself and the nationwide class. (Doc. No. 1 at 60.) In California, the elements of a claim for breach of an express or implied contract are the same. *Terpin v. AT&T Mobility, LLC*, No. 2:18-cv-06975-ODW-KS, 2020 WL 883221, at *6 (C.D. Cal. Feb. 24, 2020) (citing *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508, 525 (2009)). These elements include: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). "An implied contract requires that both parties agree to its terms and have a 'meeting of the minds,' but the creation of an implied contract can be manifested by conduct rather than words." *Castillo v. Seagate Tech., LLC*, No. 3:16-cv-01958-RS, 2016 WL 9280242, at *8 (N.D. Cal. Sept. 14, 2016).

In her complaint, Plaintiff alleges she "entered into an implied contract with [] Defendants when [she] provided [her] PHI to [] Defendants in exchange for services, pursuant to which [] Defendants agreed to safeguard [her] PHI and not disclose such information without consent." (Doc. No. 1 at ¶ 276.) Plaintiff alleges Defendants made "promises to Website users . . . through their [p]rivacy [n]otice," which emphasized the "importance of keeping [Website users'] confidential personal health information safe from unauthorized disclosure." (Doc. Nos. 40 at 18; 1 at ¶ 3.) Defendants' "[n]otice of [p]rivacy [p]ractices" describes how Defendants "may use and disclose [PHI] . . . to others . . . 'for purposes of treatment, payment and/or health care operations,'" but does not indicate Defendants will disclose PHI to Meta. (Doc. No. 1 at ¶ 3.) Finally, Plaintiff alleges Defendants breached their implied contract by disclosing her PHI to Meta. (*Id.* at ¶ 279.)

Defendants argue Plaintiff's claim for breach of implied contract should be dismissed because Plaintiff has failed to allege the essential elements of a breach of contract claim. (Doc. No. 27 at 17–19.) Specifically, Defendants argue that Plaintiff has not pled the existence of an

1   implied contract because "she does not allege any facts showing any mutual assent (offer and

2   acceptance) on the material points of the alleged implied contract." (*Id.* at 17.) Defendants further

3   argue that Plaintiff does not allege facts showing Defendants breached the terms of any implied

4   contract, such as what information Defendants obtained and shared without Plaintiff's consent.

5   (*Id.* at 18.) Finally, Defendants assert that Plaintiff does not allege any damages resulted from

6   Defendants' purported breach of implied contract. (*Id.* at 18.) Because the court finds Plaintiff

7   fails to allege the existence of an implied contract, the court will not address Defendants'

8   remaining arguments.

9       Plaintiff's assertion that an implied contract exists because Plaintiff provided her PHI to

10  Defendants in exchange for services is not supported by the pleadings. As the court has already

11  determined, Plaintiff's complaint does not allege facts sufficient to support the conclusion that

12  Plaintiff provided her PHI to Defendants. In any event, Plaintiff's reliance on Defendants' privacy

13  policy as the basis for an implied contract is misplaced. Plaintiff does not allege they reviewed

14  Defendants' privacy policies prior to using the Website. *See e.g.*, *K.L. v. Legacy Health*, No.

15  3:23-cv-1886-SI, 2024 WL 4794657, at *8 (D. Or. Nov. 14, 2024) (plaintiff's reference to

16  defendant's notice of privacy practices "as the source upon which she understood there to be

17  mutual assent" was misplaced for breach of implied contract claim where "she never allege[d]

18  that she relied upon or even read the [notice of privacy practices] before engaging [d]efendant's

19  services"). Moreover, privacy policies "may form the *terms* of an implied contract, [but] they do

20  not alone serve as an enforceable contract without a separate 'meeting of the minds' between the

21  parties." *Nienaber*, 733 F. Supp. 3d at 1092 (citing *Doe v. Regents of Univ. of Cal.*, 672 F. Supp.

22  3d 813, 821 (2023)). In other words, privacy policies are "not contractual in nature" because they

23  serve to inform patients regarding their rights and the duties imposed on healthcare providers by

24  law. *Id.*

25      Finally, Plaintiff has not made any allegations regarding consideration received by

26  Defendants for their purported promise to safeguard Plaintiff's information. "Several courts have

27  specifically found that consideration is required for an implied contract claim regarding data

28  security." *Ortiz v. Perkins & Co.*, No. 4:22-cv-03506-KAW, 2022 WL 16637993, at *6 (N.D.

18

Cal. Nov. 2, 2022); *see also Huynh v. Quora, Inc*., No. 5:18-cv-07597-BLF, 2019 WL 11502875, at *10 (N.D. Cal. Dec. 19, 2019) (finding no breach of contract claim where the plaintiffs "ha[d] not shown that they paid anything for the asserted privacy protections"); *C.M. v. MarinHealth Med. Grp., Inc*., No. 3:23-cv-04179-WHO, 2024 WL 217841, at *3–4 (N.D. Cal. Jan. 19, 2024) (adequate consideration alleged for breach of implied contract claim where plaintiff alleged he paid for healthcare services and the amount he paid for the services was based in part on defendant's security promises). Rather than alleging any kind of consideration, Plaintiff alleges that supplying Defendants with user data in exchange for services was sufficient to establish an implied in fact contract. (Doc. No. 1 at ¶ 276.) That allegation is insufficient to support a claim for breach of implied contract. *See Nienaber*, 733 F. Supp. 3d at 1092 (allegation that "the provision of user data *alone* to [d]efendant in exchange for services" was insufficient to establish an implied in fact contract). Therefore, the court cannot infer the existence of an implied contract from Plaintiff's allegations.

For these reasons, the court will grant Defendants' motion to dismiss Plaintiff's breach of implied contract claim. Although the court is skeptical that Plaintiff will be able to cure the pleading deficiencies identified as to this claim, the court will nevertheless grant Plaintiff leave to amend this claim.

### F.    Statute of Limitations

Defendants contend Plaintiff's complaint should be dismissed in its entirety because all claims are wholly or partly time-barred by the applicable statute of limitations. (Doc. No. 27 at 23.) "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute [of limitations] is apparent on the face of the complaint." *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc*., 720 F.3d 1174, 1178 (9th Cir. 2013) (internal quotation marks and citation omitted). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

Each of Plaintiff's five claims against Defendants is subject to a statute of limitations,

1    ranging from one to three years. *See* Cal. Civ. Proc. Code § 340 (statute of limitations for a CIPA

2    claim is one year); Cal. Civ. Proc. Code § 335.1 (statute of limitations for an invasion of privacy

3    claims under the California constitution or common law is two years); Cal. Civ. Proc. Code

4    § 339(1) (statute of limitation for breach of implied contract claim is two years); *Ramirez v. Dean*

5    *Foods Co. of Cal.*, No. 8:11-cv-1292-DOC-AN, 2012 WL 3239959, at *8 (C.D. Cal. Aug. 6,

6    2012) ("There is some controversy as to whether the statute of limitations for [a CMIA] claim is

7    two or three years.").

8         In her motion, Defendant argues Plaintiff's complaint should be dismissed because

9    Plaintiff does not specify when Defendants' purportedly harmful conduct occurred, making it

10   unclear whether Plaintiff's claims accrued, in whole or in part, outside the applicable statute of

11   limitations periods. (Doc. No. 27 at 24.) Because Plaintiff's complaint was filed on August 10,

12   2023, Defendants argue Plaintiff is "time-barred from bringing (1) any CIPA claim that accrued

13   prior to August 10, 2022; (2) any claims subject to a two-year statute of limitations that accrued

14   prior to August 10, 2021; and (3) any claims subject to a three-year statute of limitations that

15   accrued prior to August 10, 2020." (*Id.*) In her opposition, Plaintiff argues she has alleged viable

16   claims within each of the applicable statute of limitations periods by specifying the dates she most

17   recently visited the Website. (Doc. No. 40 at 26.)

18        The court finds Plaintiff's complaint sufficiently alleges claims within the applicable

19   statute of limitations periods. Plaintiff alleges she last visited the Website after August 10, 2022,

20   within the applicable statute of limitations periods for all claims. (Doc. No. 1 at ¶ 25.)

21   Specifically, Plaintiff visited the Website in as recently as April 2023. (*Id.*) Although Plaintiff's

22   complaint does not specify the exact date Plaintiff first used the Website, besides the fact that

23   Plaintiff began using the Website in or around March 2021, the complaint "does not indicate on

24   its face that [Plaintiff's] interactions ceased before the [statutes of limitations expired]." *See*

25   *Desert Care Network*, 2024 WL 1343305, at *5.

26        Thus, because Plaintiff's complaint does not present a statute of limitations issue that is

27   facially apparent, the court will deny Defendants' motion to dismiss Plaintiff's claims as time-

28   barred.

**CONCLUSION**

For the reasons explained above:

1.        Defendants' motion to dismiss (Doc. No. 27) is GRANTED as follows:

        a.      Plaintiff's claim for invasion of privacy under California common law is dismissed with leave to amend;

        b.      Plaintiff's claim for invasion of privacy under the California Constitution is dismissed with leave to amend;

        c.      Plaintiff's CMIA claim is dismissed with leave to amend;

        d.      Plaintiff's CIPA claim is dismissed with leave to amend; and

        e.      Plaintiff's claim for breach of implied contract is dismissed with leave to amend;

2.        Within twenty-one (21) days of the date of entry of this order, Plaintiff shall file a first amended complaint, or alternatively, file a notice of her intent not to file a first amended complaint; and

3.        Plaintiff is warned that her failure to comply with this order may result in an order dismissing this case due to her failure to prosecute.

IT IS SO ORDERED.

Dated:   **June 9, 2025**

Dena Coggins
United States District Judge